IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>CASEY CHESTER ROBERTS,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE<br><br><br>Case No. 2:15-CR-161 TS<br><br>District Judge Ted Stewart |

   This matter is before the Court on Defendant Casey Chester Roberts' Motion to Suppress Evidence. Defendant seeks to suppress all evidence obtained from the stop of his vehicle on February 20, 2015, arguing that the officer lacked reasonable suspicion for the stop. The Court conducted an evidentiary hearing on the Motion on June 13, 2016, and has carefully reviewed the parties' briefing. For the reasons discussed below, the Court will deny the Motion.

## I. BACKGROUND

   On February 20, 2015, Defendant was driving a 1987 Porsche 944 on Highway 89 near Panguitch, Utah. Troopers Skyler Harwood and Joseph Neighbor followed Defendant for a period of time. Initially, Trooper Harwood believed that Defendant's driver's side brake light was out. Trooper Harwood had planned to initiate a traffic stop for the brake light violation. However, before he made the stop, Defendant again activated his brake lights and Trooper Harwood thought that the brake lights may have illuminated. As a result, Trooper Harwood decided not to make a stop and pulled off to the side of the road.

Trooper Neighbor was following behind Trooper Harwood and Defendant. Trooper Neighbor observed that Defendant's driver's side brake light was out. While following Defendant, he observed the non-functioning brake light several times. After Trooper Harwood pulled off the side of the road, Trooper Neighbor stopped Defendant's vehicle. When Trooper Neighbor approached the vehicle, he smelled marijuana. This later led to a search of the car.

After pulling Defendant over, Troopers Harwood and Neighbor discussed the brake light. Trooper Harwood informed Trooper Neighbor that he thought the brake light was working, though dim. The officers then had Defendant test his brakes to see if they could determine if the brake light was not working at all or was just dim. Trooper Neighbor testified that "the first several times I looked at it, I still couldn't see the driver's side brake light on," but that "once or twice towards the end . . . I could see a real faint glow inside the driver's side brake light."[1] During his testimony, Trooper Neighbor reiterated several times that the reason he stopped Defendant's vehicle was because he believed the light was out.[2] Trooper Neighbor's testimony is consistent with statements he made during the stop, as recorded in the dashcam video submitted as an exhibit.

Defendant's car was eventually impounded by a towing company. Tanya Thomas, a certified vehicle safety inspector, followed behind her husband as he drove Defendant's vehicle

---

[1] Docket No. 64, at 10:8–12.

[2] *Id.* at 7:25–8:2 ("I saw it several times again that his brake light was still out, so I initiated a traffic stop there in the parking lot at one of the gas stations."); *id.* 20:13–15 ("I thought it was out. I never thought it was dim. I thought that the passenger side looked a little dim. The driver's side looked out."); *id.* at 20:20 ("I was pulling him over because it was out."); *id.* at 22:11–13 ("The driver's side, yes, the whole time, until it was pointed out to me by Trooper Harwood in the middle of the stop."); *id.* at 22:20–23 ("In the video, when I walk up to make contact with Mr. Roberts, I tell him your brake light is out. I don't tell him it's dim. I don't tell him I think it's out. I tell him your driver's side brake light is out.").

to the impound lot. Mrs. Thomas testified that, during this time, the driver's side brake lights were not working at all. When Trooper Neighbor later came to the impound lot to check the brake light, Mrs. Thomas stated that there were times when it worked and times when it did not.

## II. DISCUSSION

"Because a routine traffic stop is more analogous to an investigative detention than a custodial arrest, the principles set forth in *Terry v. Ohio* guide [our] determination as to the reasonableness of a traffic stop."[3] "Under the Fourth Amendment, the determination of whether an investigatory detention is constitutional entails a two-step analysis: the detention is reasonable if it is (1) justified at its inception and (2) reasonably related in scope to the circumstances which justified the interference in the first place."[4] Only the first step of the analysis is implicated by Defendant's Motion.

"[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring."[5] The issue is "whether [the officer] had reasonable suspicion of a violation, not whether there was actually a violation."[6] Whether

---

[3] *United States v. McGehee*, 672 F.3d 860, 866 (10th Cir. 2012) (quotation marks and citation omitted).

[4] *Id.* (quotation marks omitted).

[5] *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995).

[6] *United States v. Tibbetts*, 396 F.3d 1132, 1137 (10th Cir. 2005).

Defendant actually violated the law is irrelevant.[7] "'A traffic stop based on an officer's incorrect but reasonable assessment of the facts does not violate the Fourth Amendment.'"[8]

Trooper Neighbor stated that he stopped Defendant based upon his belief that his driver's side brake light was not working. Utah law requires motor vehicles to be equipped with two or more stop lamps.[9] Utah law states:

> A person may not operate or move and an owner may not cause or knowingly permit to be operated or moved on a highway a vehicle or combination of vehicles which . . . does not contain those parts or is not at all times equipped with lamps and other equipment in proper condition and adjustment as required in this chapter.[10]

Utah has incorporated federal standards regarding certain vehicle equipment, including lights and illuminating devices.[11] "Reading the Utah statutes and federal regulations in conjunction, it is clear that all stop lamps on a vehicle must be operational."[12]

In this case, there is ample evidence to support the conclusion that Trooper Neighbor reasonably believed that an equipment violation had occurred. Trooper Neighbor repeatedly testified that he stopped Defendant because he observed that Defendant's driver's side brake light was out. Trooper's Neighbor's testimony is supported by statements he made during the stop as reflected in the dashcam video. Trooper Neighbor informed Defendant that he stopped him because his brake light was out. He further told Trooper Harwood that he stopped

---

[7] *United States v. Vercher*, 358 F.3d 1257, 1263 (10th Cir. 2004); *United States v. Callarman*, 273 F.3d 1284, 1287 (10th Cir. 2001).

[8] *Tibbetts*, 396 F.3d at 1138 (quoting *United States v. Chanthasouxat*, 342 F.3d 1271, 1276 (11th Cir. 2003)).

[9] Utah Code Ann. § 41-6a-1604(3)(a).

[10] *Id.* § 41-6a-1601(1)(a)(ii).

[11] *Id.* § 41-6a-1601(2)(c)(iii).

[12] *United States v. Brewer*, 263 F. App'x 718, 721 (10th Cir. 2008).

Defendant because the brake light was out. These statements are further supported by the testimony of Trooper Harwood and Tanya Thomas. Trooper Harwood also believed that Defendant's brake light was not functioning and had planned to initiate a stop but, before he did so, he thought that the light may have lit up. Mrs. Thomas testified that when she followed the vehicle she saw that the brake light was not working and that when it was tested later, it worked only intermittently. Thus, all three individuals, at one point or another, believed that Defendant's brake light was out.

Defendant argues that Trooper Neighbor either did not see Defendant activate his brakes or stopped Defendant because he believed the light was dim, not out. This argument is unpersuasive given Trooper Neighbor's testimony that he observed the non-functioning brake light several times and his repeated insistence that he stopped Defendant's vehicle because the light was out. Further, Trooper Neighbor testified that he would not have pulled someone over for a dim brake light because he was uncertain whether that would be a violation. Instead, his "standard procedure" would be to research the issue so "from that point forward [I] know that it's a violation and stop them."[13]

Even if the brake light was dim and Trooper Neighbor was mistaken in his belief that the light was out, suppression would not be warranted. An officer's reasonable mistake of fact may support reasonable suspicion necessary to justify a traffic stop.[14] Thus, even assuming the light was functioning but dim, Trooper Neighbor could still conduct a stop if he had a reasonable suspicion that a violation had occurred. As set forth above, the Court concludes that Trooper

---

[13] Docket No. 64, at 21:12–19.

[14] *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009).

Neighbor reasonably believed that the light was out and his stop was based on this belief. This is sufficient to provide reasonable suspicion to justify the stop.

Defendant's reliance on *United States v. Rosvall*,[15] is misplaced. In *Rosvall*, this Court, per the Honorable Tena Campbell, found that an officer's stop was not justified because no traffic violation had occurred and the officer "was mistaken in his understanding of the law when he conducted the traffic stop."[16] Here, there is no question that a non-functioning brake light would violate Utah law and would present sufficient justification for a stop. As set forth above, Trooper Neighbor reasonably believed that Defendant's brake light was out. Thus, this is not a case where Trooper Neighbor was mistaken about whether Defendant's conduct was in violation of the law. At worst, Trooper Neighbor was mistaken about the factual premise for the stop. Had the light been out, as Trooper Neighbor reasonably believed, a stop would be justified.

III. CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Suppress Evidence (Docket No. 52) is DENIED. Pursuant to 18 U.S.C. § 3161(h)(1)(D), (H), the time from the filing of the Motion to the date of this order is excluded from computation under the Speedy Trial Act. The Court will set this matter for a status conference to establish further deadlines.

---

[15] 651 F. Supp. 2d 1274 (D. Utah 2009).

[16] *Id.* at 1277. Even if *Rosvall* applied, its continued validity is questionable in light of *Heien v. North Carolina*, ---U.S.---, 135 S. Ct. 530 (2014), which held that reasonable suspicion can rest on a reasonable mistake of law.

DATED this 28th day of July, 2016.

BY THE COURT:

_____
Ted Stewart
United States District Judge